The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and after the hearing as:
STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
2. The parties attached an index to the Pre-Trial Agreement. This index includes the following:
(1) Wal-Mart Pharmacy Records,
(2) Catawba Memorial Hospital (medical records),
(3) Hart Industrial Clinic (medical records),
(4) Graystone Ear, Nose, and Throat Center (medical records),
(5) Dr. William L. Sims (medical records),
 (6) North Carolina Baptist Hospital — The Bowman Gray School of Medicine (medical records),
(7) Dr. Larry W. Boyles (medical records),
(8) South Park Medical Clinic (medical records),
(9) Frye Regional Medical Center (medical records),
(10) Employee's Recorded Statement,
(11) Industrial Commission Form 22.
These stipulated documents were received into evidence.
3. The parties submitted stipulated medical records from Dr. Stutesman marked as Stipulated Exhibit No. 1 and received into evidence (ten pages).
4. The parties submitted medical records from Dr. Bell marked as Stipulated Exhibit No. 2 and received into evidence (two pages).
5. The parties submitted stipulated employment records marked as Stipulated Exhibit No. 3 and received into evidence (ten pages).
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a fifty-two year old female with a high school degree.
2. Plaintiff worked as a second shift assembler/packer for the defendant-employer. On July 1, 1993, plaintiff bent down near a filter machine that she operated. Plaintiff's hair was in a ponytail which caught in the machine around a glue roller. Plaintiff's head was pulled forward resulting in at least five inches of her ponytail being broken off. Plaintiff was pulled up against the machine with her head sideways in reference to the middle part of the machine. Plaintiff felt a crunching sound or sensation in her neck.
3. Co-employees, Tabitha Bates and Jessica Loomis, heard the plaintiff call for help and came and turned the filter machine off. Ms. Bates had difficulty freeing the plaintiff because plaintiff's hair was wound tightly around the roller. Plaintiff could not move her head which was sideways against the machine. Ms. Bates informed supervisor Jim Moore as to what had happened.
4. On July 1, 1993, after the conversation with Tabitha Bates, supervisor Jim Moore questioned the plaintiff as to whether she wanted to receive medical attention at that time. Plaintiff indicated that she did not want to see a doctor at that time. Because the plaintiff did not immediately desire to seek medical treatment, Mr. Moore did not fill out a Form 19 Accident Report.
5. The following three weeks after the July 1, 1993 incident, the plaintiff began to experience dizziness and neck discomfort. The plaintiff finally went to the emergency room at Catawba Memorial Hospital on July 19, 1993 complaining of dizziness and nausea. Plaintiff was also seen at the emergency room on July 21, 1993, July 24, 1993 and August 12, 1993. On July 24, 1993, plaintiff complained of neck discomfort as well as dizziness. On August 12, 1993 an MRI was conducted on plaintiff's behalf. The MRI revealed a hard disc protrusion at C5-6 with compression of the spinal cord.
6. Plaintiff's herniated disc at C5-6 was caused by the work-related incident that occurred on July 1, 1993.
7. As a result of the July 1, 1993 work-related incident, Dr. William Bell performed a C5-6 anterior cervical diskectomy and fusion on October 29, 1993.
8. As a result of the work-related incident on July 1, 1993, plaintiff has sustained a 17% percent permanent partial disability to her neck (back).
9. Dr. Frank Maudlin diagnosed plaintiff as suffering from benign positional vertigo.
10. Dr. John May, an otolaryngologist, at North Carolina Baptist Hospital opined that the vertigo that plaintiff had begun to experience subsequent to July 1, 1993 could have been caused by the July 1, 1993 work-related incident.
11. As a result of the July 1, 1993 work-related incident, plaintiff has sustained permanent damage to her vestibular system, an important internal organ, for which she would be entitled to $2,000.00 under the Workers' Compensation Act.
12. As a result of the July 1, 1993 incident and resulting surgery, plaintiff was unable to work from July 19, 1993 to August 1, 1993 and from August 16, 1993 to December 13, 1993. On December 13, 1993, plaintiff reached maximum medical improvement.
13. Plaintiff was able to work on December 13, 1993, however; defendant-employer had no jobs available for the plaintiff in light of the restrictions imposed by her medical caretakers prohibiting her from doing jobs that required being in close proximity to heavy machinery.
14. Plaintiff sought assistance from the North Carolina Division of Rehabilitation Center in attempting to secure employment. Plaintiff attempted to locate work at a number of convenience stores. Plaintiff made a reasonable attempt to secure employment within her restrictions. On July 29, 1994 plaintiff began working at a convenience store for twenty to thirty hours a week at $6.00 per hour.
15. At the time of the July 1, 1993, work-related incident, plaintiff's average weekly wage was $285.67.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On July 1, 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a neck injury (back) and an injury to her vestibular system as the result of a specific traumatic incident of the work assigned. N.C. GEN. STAT. § 97-2 (6).
2. Plaintiff is entitled to temporary total disability compensation at the rate of $190.46 per week for the time period beginning July 19, 1993 to August 1, 1993 and August 16, 1993 to July 29, 1994. N.C. GEN. STAT. § 97-29.
3. Plaintiff must make an election of benefits for either temporary partial disability payments under N.C. GEN. STAT. § 97-30 or for organ damage to plaintiff's vestibular system and permanent partial disability to plaintiff's back under N.C. GEN. STAT. § 97-31. If plaintiff elects to receive benefits under N.C. GEN. STAT. § 97-31, she is entitled to $2,000.00 for the damage to her vestibular system; and she is entitled to receive permanent partial disability compensation for fifty-one (51) weeks at a compensation rate of $190.46. N.C. GEN. STAT. § 97-30 and 97-31;Gupton v. Builders Transport, 320 N.C. 38 (1987).
4. Plaintiff is entitled to have defendant provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen disability. N.C. GEN. STAT. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation of $190.46 per week for the time period beginning July 19, 1993 to August 1, 1993 and August 16, 1993 to July 29, 1994. This amount shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five (25) percent of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
* * * * * * * * * * *
ORDER
IT IS FURTHER ORDERED that the plaintiff shall make an election of remedies as between N.C. GEN. STAT. § 97-30 and GEN. STAT. § 97-31. In that the amount that would be due under N.C. GEN. STAT. § 97-31 has been set forth in this decision, the parties should be able to resolve the issue by open agreement.
FOR THE FULL COMMISSION
 S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 12/12/95